1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                         DISTRICT OF NEVADA
8                                * * *
9
UNITED STATES OF AMERICA,            )
10                                   )
                                     )          2:05-CR-432-KJD-RJJ
11          Plaintiff,               )
                                     )
12                                   )     REPORT &   RECOMMENDATION
vs.                                  )         OF UNITED STATES
13                                   )         MAGISTRATE JUDGE
GARY RUSHWAM,                        )     (Defendant's Motion to Suppress (#17))
14                                   )
                                     )
15          Defendant.               )
_____)
16
17          This matter came before the Court on a hearing on Defendant Gary Rushwam's Motion to

18   Suppress (#17).  The Court has considered the Motion (#17), the Government's  Opposition (#18),

19   the Appendix to Defendant's Motion to Suppress (#19), and the testimony and evidence presented

20   at the evidentiary hearing.

21                              **BACKGROUND**

22          On November 16, 2005, the defendant, Gary Rushwam, was indicted by a federal grand jury

23   and charged with violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm.

24   A  superseding  indictment  was  filed  on  January 6, 2006,  which  added  more  detail  regarding

25   Rushwam's criminal history.  The charge against defendant Rushwam is based on evidence seized

26   by law enforcement officers from the defendant's residence during the execution of a search warrant.

27   Rushwam challenges the search warrant and asks  this Court to suppress the evidence obtained as

28   a result of the search.

On September 28, 2005, while patrolling the Miracle Mile Mobile Home Park, Detective D. Valenta of the Las Vegas Metropolitan Police Department (LVMPD) Repeat Offender Program observed a white Ford van, California license plate number 3HUE006. The van parked at the mobile home park and two individuals exited the vehicle and proceeded into a mobile home on the premises. A records check of the van's license plate reported it as a stolen vehicle that was taken during a recent residential burglary. Upon the return of the driver a felony stop of the vehicle was conducted, and the van's two occupants were taken into custody. The driver of the van was identified as Douglas Parker.

At the time of his arrest, Douglas Parker was questioned by Det. Valenta about his possession of the stolen van. Parker admitted knowing the van belonged to Teresa Wilson and that it had been stolen during a burglary of Wilson's apartment. Parker told Det. Valenta that the burglary was the idea of a man known to him as Gary Dean, and that Parker was permitted to keep the van as payment for being the lookout during the burglary. According to Parker, Gary entered Wilson's apartment and returned 10-15 minutes later with 3-4 duffle bags of stolen property, along with the keys to the van. The two men then loaded the van with the bags and Gary drove the van to his residence. Upon arrival at Gary's home he removed the duffle bags and turned the van over to Parker, who left in the van. Parker stated that during the ride from Wilson's apartment to Gary's residence Gary told him of a prior attempt to burglarize Wilson's apartment. That attempt was interrupted when Wilson returned home and found him in her apartment. After speaking with Det. Valenta about the burglary, Parker directed the detective to Gary Dean's residence at 3560 Lost Hills Drive. According to Parker, some of Wilson's stolen jewelry was located in the backyard of the residence. Det. Valenta recognized the residence from prior police investigations as belonging to the defendant, Gary Dean Rushwam.

On September 29, 2005, Det. Valenta interviewed Teresa Wilson. Ms. Wilson was informed that Douglas Parker had been arrested in possession of her stolen van[1] and that he had confessed to

---

[1] The registered owner of the van is Mildred Wilson, the mother of Teresa Wilson, who was contacted by police upon recovery of the vehicle. Mildred Wilson informed police that, exclusive of herself, Teresa was the only person with rights or legal access to the van and that the vehicle was stolen during a burglary of Teresa's apartment.

1   burglarizing her apartment with a person named Gary Dean.  Wilson stated that she knew "Gary"

2   and that he had tried to burglarized her apartment in the past but was interrupted when she returned

3   home.  According to Wilson, she came home to find a man hiding in her room, and that the man fled

4   out the sliding glass door when she began to scream for help.  Wilson immediately recognized the

5   fleeing man as Gary, and stated that he pointed a knife at her as he fled.  Though Wilson reported

6   the attempted burglary to police and a report was issued (#050818-3512), no arrest had been made

7   because Gary's last name was unknown.  Wilson, despite not knowing Gary's last name, was able

8   to give Det. Valenta directions to the location she knew to be Gary's home.  The directions provided

9   by Wilson were to the defendant's residence at 3560 Lost Hills Drive.  A photo line-up was

10  presented to Wilson, who identified the defendant as the man she found in her apartment.

11          On October 3, 2005, a sealed search warrant was issued authorizing law enforcement to

12  search the residence of the defendant at 3560 Lost Hills Drive for property stolen from the apartment

13  of Teresa Wilson as specified in report #050920-2659.  A background check on Gary Rushwam

14  revealed that he was had a prior felony conviction.  That same day, officers from the LVMPD

15  executed the search warrant for the defendant's residence.  In searching the residence for the stolen

16  property listed in the warrant, Detective J. Hernandez came upon 3 soft shell gun cases in the  open

17  closet of  the defendant's bedroom.  Det. Hernandez testified that the gun cases contained several

18  zippered compartments and were zipped closed.  After feeling the cases and determining that they

19  might contain weapons and stolen property small enough to fit inside, Det. Hernandez unzipped the

20  cases and searched them.  The cases contained a 12 gauge shotgun, a rifle with scope, and a double

21  barrel shotgun.  The firearms were seized and impounded.

22          The defendant now moves the court  to suppress the weapons seized from his residence by

23  law enforcement officers during the execution of the search warrant.  Rushwam advances two

24  arguments in support of his motion.  First, the defendant argues that the warrant failed to satisfy the

25  requisite probable cause requirement.  Second, the defendant claims that the firearms seized were

26  beyond the scope of the warrant and not in plain view.

27  . . . .

28  . . . .

**DISCUSSION**

**I.    Probable Cause**

The defendant argues that the Application and Affidavit for Search Warrant  fail to set forth a reasonable basis to believe that the property stolen from Teresa Wilson's apartment would be located in his home.  Rushwam contends that because the police failed to conduct surveillance or an investigation establishing the probability that the stolen property was contained in his home, the warrant was issued solely on probable cause that he committed a crime.  Without a reasonable and demonstrated link between a belief that he committed a crime and the storage of stolen goods in his residence, Rushwam claims that the warrant fails and that the evidenced obtained pursuant to the warrant should be suppressed.

Probable cause that a suspect committed a crime will not secure a search warrant for the suspect's home without reasonable cause  to believe the items sought would be found in the home.  United States v. Ramos, 923 F.2d 1346, 1351 (9th Cir. 1991) *rev'd on other grounds* United States v. Ruiz, 257 F.3d 1030 (9th Cir. 2000)(citations omitted).  When issuing a search warrant a magistrate judge must determine, from a totality of the circumstances, that a reasonable nexus exists between the contraband sought and the residence to be searched.  United States v. Chavez-Miranda, 306 F. 3d 973, 978 (9th Cir. 2002) *citing* United States v. Rodriguez, 869 F.2d 479, 484 (9th Cir. 1989).  In determining if a "reasonable nexus" exists between the two, "a magistrate judge need only  find that it would be reasonable to seek the evidence there."  Id. *citing* United States v. Terry, 911 F.3d 272, 275 (9th Cir. 1990).  To issue a search warrant, no direct evidence is required to link the residence to the stolen property.  United States v. Jackson, 756 F.3d 703, 705 (9th Cir. 1985).

The totality of the circumstances in this case supports the existence of a reasonable nexus between the property stolen from Wilson and the defendant's residence.  Douglas Parker's statement to police informing them that Rushwam was the individual who burglarized Wilson's apartment,   that he last saw the defendant in possession of 3 or 4 duffle bags of stolen property outside of the defendant's residence, and that some of Wilson's stolen jewelry was in the backyard of the defendant's home all support a reasonable nexus linking the stolen property and

1    the defendant's home.  In addition to his statement, Parker physically identified the defendant's

2    home for police and informed them of the defendant's prior attempt to burglarize Wilson, as

3    relayed to him by Rushwam himself.  The police were able to corroborate Parker's statements

4    regarding Rushwam's prior attempted burglary of Wilson's apartment with Wilson, who also

5    directed police to the defendant's residence at 3560 Lost Hills Drive and who positively

6    identified the defendant's photo when shown a 6-shot photo line-up. Through previous and

7    ongoing investigations, Det. Valenta of the Las Vegas Metropolitan Police Department knew the

8    residence identified by both Wilson and Parker to belong to defendant Rushwam.

9         A reasonable nexus existed between the stolen goods and the defendant's residence as

10   established by the statements of informant Douglas Parker and the victim, Teresa Wilson.  The

11   information provided by Parker, as corroborated by Wilson,  viewed in conjunction with the

12   police's knowledge of the defendant's residence and the type of offense involved establishes a

13   substantial basis for a finding of probable cause sufficient to issue a search warrant of the

14   defendant's residence.  The defendant's motion to suppress should be denied.

15   **II.    Scope of the Search**

16        In addition to challenging the warrant for lack of probable cause, the defendant argues

17   that the firearms taken from his residence were illegally seized by the police because the weapons

18   were beyond the scope of the warrant and not found in plain view.  The defendant contends that

19   the firearms, not specifically itemized on the face of the warrant, required a separate warrant for

20   seizure.  The plain view doctrine, as an exception to the warrant requirement, holds warrantless

21   seizure of items valid when 1) the officer is lawfully in the place where the seized item was in

22   plain view; 2) the item's incriminating nature was immediately apparent; and 3) the officer had a

23   lawful right to access the object itself.  United States v. Wong, 334 F.3d 831, 838 (9th Cir. 2003).

24        The first requirement of the plain view doctrine is satisfied by the fact that detectives

25   were lawfully permitted by warrant to search the defendant's home.  The warrant authorized the

26   officers to search for stolen property of varying size, including very small pieces of jewelry and

27   knives.  Because of the size and nature of the stolen property and  in order to effectively search

28   for the goods, the detectives were permitted to search any place in the defendant's residence

1  where the stolen goods may be kept.  The defendant's bedroom closet falls within the authorized

2  search area. Given that the soft shell gun cases were located within the closet and that they

3  contained various zipped compartments within which items targeted by the search warrant could

4  be concealed, a search of these compartments is lawful under the warrant.  Once initiated, a

5  search of the gun cases ultimately revealed the firearms inside.

6        The incriminating nature of the firearms was clearly apparent to the searching detective,

7  satisfying the second requirement of the plain view doctrine.  Detective Hernandez testified that

8  before executing the warrant the officers were informed of Rushwam's prior felony conviction

9  which  barred him from possessing firearms.  Once Det. Hernandez found  the firearms he knew

10  that they were evidence of the commission of a crime; Felon in Possession of a Firearm in

11  violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   As evidence of a crime, the police had a

12  lawful right to seize the firearms, satisfying the third requirement of the plain view doctrine.  The

13  firearms were properly seized.

14        The facts of this case satisfy the requirements of the plain view doctrine.  The detectives

15  were authorized to search the defendant's home, including the zippered compartments of the gun

16  cases for stolen property.  The firearms were found withing the scope of the warrant and properly

17  seized. The motion to suppress should be denied.

18                          **RECOMMENDATION**

19        Based on the foregoing and good cause appearing therefore,

20        IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the

21  Defendant's Motion to Suppress (#17) BE DENIED.

22                              **NOTICE**

23        Pursuant to Local Rule IB 3-2 [former LR 510-2] any objection to this Report and

24  Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days

25  after service of this Notice.  The Supreme Court has held that the courts of appeal may determine

26  that an appeal has been waived due to the failure to file objections within the specified time.

27  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).  This Circuit has also

28  held that (1) failure to file objections within the specified time and (2) failure to properly address

1    and brief the objectionable issues waives the right to appeal the District Court's order and/or

2    appeal factual issues from the order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

3    Cir. 1991); <u>Britt v. Simi Valley United Sch. Dist.</u>, 708 F.2d 452, 454 (9th Cir. 1983).

4           DATED this <u>12th</u> day of June, 2006.

5

6

7

8                                                    _____

9                                                    ROBERT J. JOHNSTON
                                                     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28